IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) NO. 3:19-cr-00052 |
| v. | ) JUDGE RICHARDSON |
| | ) |
| SHAUN HARRIS | ) |

## MEMORANDUM OPINION & ORDER

Pending before the Court is Defendant's Motion to Suppress (Doc. No. 21, "the Motion"). Via the Motion, Defendant seeks to suppress his statements made to law enforcement officers on the grounds that his statements were obtained in violation of the Fifth Amendment. The Government has filed a response (Doc. No. 34), and Defendant replied (Doc. No. 35). Therefore, this matter is ripe for decision.[1]

On May 24, 2018, an alleged male victim exited his car in the parking lot of his apartment complex when two male individuals approached him from behind. One of the male individuals pointed a handgun at the victim and demanded that he "empty his pockets." The male individuals then took the victim's wallet, car keys, and cell phone and drove away in the victim's car. The victim's wife provided the Metropolitan Nashville Police Department ("MNPD") with images of both robbers that she obtained from the apartment complex's camera system. The images were disseminated to local media outlets.

On May 25, 2019, the day after the robbery, Defendant turned himself in. At the time, there was no warrant issued for Defendant's arrest. MNPD Detectives Brian Stanley and Joseph Haislip

---

[1] Defendant requested an evidentiary hearing. The Court declines that request because the facts the Court relies on in making its decision (mainly, the language in the waiver of *Miranda* rights form that Defendant signed) are undisputed. (*See* Doc. No. 35-1).

subsequently questioned Defendant at the police station. Prior to the initiation of questioning, Defendant signed a *Miranda* waiver form, which read in relevant part:

> Before we ask you any questions, you must understand your rights:
>
> **Waiver of Rights**
>
> You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to an attorney. If you cannot afford an attorney, one will be provided for you. Do you understand the rights I have just read to you? With these rights in mind, do you wish to speak to me?"

(Doc. No. 35-1). Defendant signed the Waiver of Rights and then gave incriminating statements to the detectives.

Defendant argues that the *Miranda* warnings given to him were invalid because the written *Miranda* waiver advised Defendant "that he had 'the right to an attorney,' [but] did not explain that he had that right *before and during* the interrogation." (Doc. No. 21 at 4). The Government argues that (1) *Miranda* warnings were unnecessary because Defendant was not in custody during the interview; and (2) even assuming *arguendo* Defendant was in custody during the interview, the written *Miranda* warnings provided to Defendant did not violate Defendant's Fifth Amendment rights. (Doc. No. 29 at 3-9). The Court agrees with the Government that, assuming *arguendo* Defendant was in custody, the written *Miranda* waiver provided to Defendant passes Fifth Amendment scrutiny.

The Fifth Amendment provides that a defendant in a criminal case cannot be compelled to be a witness against himself. *See* U.S. Const. amend. V. Consistent with that right, in *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966), the Supreme Court held "if a person in custody is to be subjected to interrogation, he must first be informed in clear and unequivocal terms that he has the right to remain silent [and the right to counsel]." The right to counsel includes both "the right to

consult with a lawyer and to have the lawyer with [you] during interrogation." *Berghuis v. Thompkins*, 560 U.S. 370, 383 (2010).

With respect to the adequacy of *Miranda* warnings, the Sixth Circuit in a recent opinion explained:

> Warnings need not be formulaic. *Powell*, 559 U.S. at 60; *Duckworth v. Eagan*, 492 U.S. 195, 202–03 (1989); [*California v. Prysock*, 453 U.S. 355, 359-60 (2012)]. Indeed, there is no "talismanic incantation" officers must follow. *Prysock*, 453 U.S at 359. Rather, what officers must do is warn a suspect in a manner that, to invoke a baseball analogy, "touch[es] all of the bases" reasonably to convey to a suspect his rights under *Miranda*. *Duckworth*, 492 U.S. at 203. With some play in the joints, courts should not "examine *Miranda* warnings as if construing a will or defining the terms of an easement." *Id*. Instead, our test is a practical one: *Would a suspect hearing the warnings reasonably understand his options regarding interrogation?*

*United States v. Clayton*, No. 18-2237, 2019 WL 4125275, ---F.3d---, at *6 (6th Cir. Aug. 30, 2019) (emphasis added). The court then narrowed in on the right-to-counsel aspects of *Miranda* and discussed the Supreme Court's decision in *Florida v. Powell*, 559 U.S. 50, 60 (2010).

> In *Powell*, a Florida police officer told a suspect: "You have the right to talk to a lawyer before answering any of our questions. If you cannot afford to hire a lawyer, one will be appointed for you without cost and before any questioning. You have the right to use any of these rights at any time you want during this interview." *Id*. at 54[.] The Florida Supreme Court deemed this warning misleading because it interpreted "before questioning" as imposing a time limit on the right to counsel. *Id*. at 55[.] That phrasing, the Florida Supreme Court concluded, erroneously suggested that the suspect (Powell) could consult with an attorney only "before" the interrogation started. *Id*. "Before" was thus said to define both the beginning—and end—to the right's duration. *Id*.
>
> The Supreme Court disagreed. The warning, it explained, made clear the seminal right at stake—"the right to talk to a lawyer." And when the entire instruction was "given a commonsense reading," the warning effectively "communicated that the right to counsel carried forward to and through the interrogation . . . ." *Id*. at 63[.] Nothing in the warning, the Supreme Court observed, indicated that the right expired once questioning began. *Id*. at 62[.] The phrase "before any questioning," which had troubled the Florida Supreme Court, was seemingly misconstrued by that court. These warnings, said the Supreme Court, merely indicated when that right began, not how long it lasted. *Id*.

> Other aspects of the warning further confirmed that Powell was sufficiently advised of the comprehensive nature of his right to counsel. The warning at issue in Powell included a "catchall" provision informing the defendant that he had the right to "use any of these rights at any time you want during this interview." *Id*. at 55[.] Read together, the warnings stated that a suspect had the right to talk to a lawyer before any questions and that he could invoke that right at any point, including during questioning. *Id*. at 62–63[.] Of course, "[d]ifferent words were used in the advice Powell received" when compared to *Miranda's* precise formulation. *Id*. at 64[.] But, it bears noting, "they communicated the same essential message." *Id*.

*Clayton*, 2019 WL 4125275, at *6-7. Thus, the question before the Court is whether the Waiver of Rights "given a commonsense reading[,]" reasonably conveyed to Defendant that he could consult with an attorney *before and during* questioning. *Id*. at *6 (internal quotation marks omitted).

Defendant points out, and the Court recognizes, that the language in the Waiver of Rights is not identical to the language of the *Miranda* warnings given in *Clayton*. In *Clayton*, law enforcement informed the defendant prior to interrogation that: "You have the right to talk to a lawyer before we ask you any questions. . . . If you cannot afford to have a lawyer, one will be appointed for you before any questioning if you wish." *Id*. at *5. In this case the "[b]efore we ask you any questions, you must understand your rights" language is located above the heading "Waiver of Rights[.]" (Doc. No. 36-1). Therefore, Defendant argues that unlike the "before we ask you any questions" verbiage in *Clayton*, the "before we ask you any questions" verbiage here "clearly applies [only] to the second phrase of the same sentence, that 'you must understand your rights.'" (Doc. No. 30 at 3). And because that language is situated above the "Waiver of Rights" heading, Defendant avers that the language "in no way can be imputed to modify a single sentence situated in the middle of the next paragraph" and therefore "does not rectify the problem with the *Miranda* warnings given to [Defendant]." (*Id*.). The Court disagrees.

At the outset, the Waiver of Rights plainly advises someone in custody (like Defendant) that he or she needs to understand his rights prior to questioning. The Court finds that under a

"commonsense reading" of this advice, an objectively reasonable suspect in a custodial setting would understand that he or she needs *to understand those rights prior to questioning* precisely because he is allowed *to exercise those rights prior to questioning*. This view is further supported by the final sentence of the Waiver of Rights, which asks, "With these rights in mind, do you wish to speak to me?" (Doc. No. 35). This sentence would be superfluous if the suspect was not able to exercise, *prior to interrogation*, the rights of which he had been advised. In fact, the Court finds that it would be "counterintuitive" for an objectively reasonable suspect in custody, having been advised of his rights prior to interrogation and asked "with these rights in mind, do you with to speak to me," to believe that those rights could not be exercised prior to the interrogation. *Powell*, 559 U.S. at 62-63.

Just as an objectively reasonable person in Defendant's position would have understood that these rights could be exercised *prior to* questioning, he or she would have understood that they carried forward and could be exercised *during* questioning. As in *Powell*, here:

> when the entire instruction [i]s "given a commonsense reading," the warning effectively "communicated that the right to counsel carried forward to and through the interrogation . . . ." Nothing in the warning [. . . ]indicated that the right expired once questioning began. The phrase "before[ . . . ] any question[s]," which had troubled [the defendant's counsel], was seemingly misconstrued by [the defendant's counsel]. These warnings . . . merely indicated when that right began, not how long it lasted.

*Clayton*, 2019 WL 4125275, at *7 (citations omitted) (quoting *Powell*, 559 U.S. at 62, 63).

True, the Waiver of Rights language was not the "clearest possible" advice of rights that could be given. *Powell*, 559 U.S. at 63 ("Although the warnings were not the clearest possible formulation of *Miranda's* right-to-counsel advisement, they were sufficiently comprehensive and comprehensible when given a commonsense reading."). But it did not need to be to pass constitutional muster. Examining the Waiver of Rights objectively and under the totality of

5

circumstances, the Court concludes that a reasonable suspect would have "reasonably [understood] his options regarding interrogation," and therefore Defendant's Fifth Amendment rights were not violated via an (alleged) insufficient advisement of *Miranda* rights. *Clayton*, 2019 WL 4125275 at *6. Accordingly, Defendant's Motion to Suppress (Doc. No. 21) is **DENIED**.

    IT IS SO ORDERED.


                                      *Eli Richardson*
                                    ELI RICHARDSON
                                    UNITED STATES DISTRICT JUDGE